UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRITTANY CLYBOURN,

                Plaintiff,

-against-

SPIDERBANDS LLC, and FRANCI COHEN,

                Defendants.

**OPINION AND ORDER**

18 Civ. 03688 (ER)

Ramos, D.J.:

      Brittany Clybourn, a fitness instructor, brings this diversity action against a fitness studio, Spiderbands LLC, and its owner, Franci Cohen, for breach of contract and violations of New York Labor Law. Spiderbands LLC and Cohen move to dismiss Clybourn's complaint for failure to state a claim. Doc. 18. For the reasons set forth below, Defendants' motion is GRANTED in part and DENIED in part.

**I.  Background**

      Defendants and Clybourn entered into an employment agreement on September 12, 2017, pursuant to which Clybourn was to teach fitness classes and engage in related activities. Doc. 1, 3. In the relevant parts, the employment agreement provides as follows:

> [Y]ours hours of employment are 30 hours per week (12-15 classes in studio, plus an additional 15 hours spent preparing music, choreography, interacting with clientele before/after class and on social media, and posting the required amount (3 to 4 posts per week) of Spider posts on your social media, and other preparatory tasks done to foster your success as an instructor).
> . . . .
> Your gross cash salary, inclusive of any statutory vacation pay to which you may be entitled, will be $200 per class, +7% of revenue received from class attendees over 15 per class, or $93 per class with over 15 attendees per class if the class is sold out, also payable, subject to statutory deductions, in bi-weekly installments

> not in advance; in addition you have the following taxable fringe benefits in connection with your employment: health insurance after 90 days from start date or allowance of up to $200/month from owner if you so choose.

Doc. 20-1, 1–2. Clybourn alleges that she taught approximately 148 classes and received $24,381.47, before taxes—not the $29,600 that she should have earned after teaching 148 classes at a rate of $200 per class. Doc. 1, 4. Clybourn further alleges that Defendants never furnished a pay statement and only issued paystubs through an online service that she could not access. *Id.* at 3. On February 2, 2018, Clybourn met with Cohen to discuss her concern that she had not been paid in full and that she had not been issued her paystubs. *Id.* at 4. She raised these and similar concerns in emails sent on February 2, 2018, and February 4, 2018. *Id.* In the February 2 email, she complained about late payroll payments, being made to conduct tasks outside of her job description, breach of contract, workplace stress, "feel[ing] harassed," and the fact that her pay rate was disclosed to a co-worker. Doc. 23-1, 3. In the February 4 email, Clybourn wrote, "I have not received my proper pay or pay stubs" and "[t]his is against the law." Doc. 23-1, 2. On February 5, 2018, Defendants terminated Clybourn's employment. Doc. 1, 5. On April 4, 2018, Clybourn sued Defendants for violations of New York Labor Law ("NYLL") and for breach of contract.

## II.     Standard

Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Koch v. Christie's Int'l, PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, the Court is not required to credit "mere conclusory

statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79. If the plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

### III. Documents Considered

In deciding this motion, the Court considers some but not all of the documents that the parties have provided. For the purposes of a motion to dismiss, the Court may only consider "the factual allegations in plaintiffs'" complaint, "documents attached to the complaint as an exhibit or incorporated in it by reference," "matters of which judicial notice may be taken," or "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). For the final class of documents, "*reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion" and "mere notice or possession is not enough." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Furthermore, reliance must "render[] the document 'integral' to the complaint." *Id.* at 153. For a court to regard a document as "integral," "it must be clear on the record that no

dispute exists regarding the authenticity or accuracy of the document" and "[i]t must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). *See also Chambers*, 282 F.3d at 154 (finding that the district court improperly considered unsigned agreements when deciding a motion to dismiss because the complaint did not refer to the unsigned agreements, because plaintiffs did not rely on them in drafting the complaint, and because the parties disagreed as to whether the unsigned agreements related to the contractual relationships at issue).

In the instant case, the parties have attached a number of documents to their briefs. To their memorandum in support of their motion to dismiss, Defendants attach an affidavit of Defendant Franci Cohen, a copy of a class schedule, a copy of the employment agreement between Defendants and Clybourn, and a copy of the February 2, 2018 email Clybourn sent to Cohen and others. Doc. 21. To her memorandum in opposition, Clybourn attaches a copy of the February 4, 2018, email sent by her to Cohen and others. Doc. 23. To their reply memorandum, Defendants attach a copy of Clybourn's electronic paystubs and an email to Clybourn with PayChex Payroll Account login information. Doc. 27.

The Court will consider only the employment contract and the two emails sent by Clybourn. In her complaint, Clybourn explicitly referenced and relied heavily on these documents. Doc. 1, 3–4. Furthermore, no party disputes the authenticity, accuracy, or relevance of these documents.

The Court will not consider Cohen's affidavit, the class schedule, paystubs, and login information email. The parties dispute the accuracy of the affidavit and the class schedule because Clybourn claims that "she taught or was scheduled to teach approximately 148 classes," Doc. 1, 4, but Defendants assert that Clybourn taught only 86 classes. Doc. 20, 1; Doc. 21-1.

4

The parties also dispute the relevance of the paystubs and login information email. Clybourn alleges that Defendants issued paystubs through an online service, but that she was unable to access them. Doc. 1, 3. Under Clybourn's theory, the paystubs and email are not relevant because she never saw the paystubs.

**IV.      Discussion[1]**

Clybourn raises a breach of contract claim and four NYLL violations: (1) § 195(1)(a) for failing to provide her with a pay notice; (2) § 195(3) for not granting her access to her pay statements; (3) § 191(1)(d) for not paying her a sum guaranteed by the agreement; and (4) § 215(1)(a) for retaliation by terminating her employment the day after she complained about the foregoing violations. As explained below, the Court denies Defendants' motion with regard to all claims except for the claim for underpayment pursuant to NYLL § 191(1)(d).

**A.      Pay Notice**

Clybourn has stated a valid claim for failure to provide a pay notice. NYLL requires employers to provide "at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, . . . allowances, if any, claimed as part of the minimum wage, [and] the regular pay day designated by the employer." NYLL § 195(1)(a). It further mandates that, "For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the notice must state the regular hourly rate and overtime rate of pay." *Id.*

---

[1] Because Plaintiff is a resident of New Jersey and Defendants are residents of New York and because there is no dispute that the amount in controversy exceeds $75,000, the Court has original subject matter jurisdiction over this case. 28 U.S.C. § 1332(a).

Clybourn claims that Defendants failed to comply with this law.  Defendants argue the Clybourn's employment contract suffices.  The relevant parts of the employment contract provides as follows:

> [Y]ours hours of employment are 30 hours per week (12-15 classes in studio, plus an additional 15 hours spent preparing music, choreography, interacting with clientele before/after class and on social media, and posting the required amount (3 to 4 posts per week) of Spider posts on your social media, and other preparatory tasks done to foster your success as an instructor).
> . . . .
> Your gross cash salary, inclusive of any statutory vacation pay to which you may be entitled, will be $200 per class, +7% of revenue received from class attendees over 15 per class, or $93 per class with over 15 attendees per class if the class is sold out, also payable, subject to statutory deductions, in bi-weekly installments not in advance.

Doc. 20-1, 1–2.  Clybourn argues that the employment contract did not comply with § 195(1)(a) because it did not include the regular hourly rate, the overtime rate, or the regular pay day.  Doc. 22, 20.  The Court agrees.  For the fifteen non-class hours, the employment contract does not specify the pay rate or overtime rate at all.  Similarly, the employment contract references "bi-weekly installments" but it does designate a regular pay day, as required by the statute.

Defendants do not contest that these disclosure requirements apply to Clybourn.  Instead, they assert that the employment agreement satisfied § 195(1)'s requirement to provide rates of pay at the time of hiring, and that thereafter the paystubs that they made available fulfilled the notice requirements.  Doc. 19, 14.  Defendants are wrong on both counts.  The employment agreement contains no reference to Clybourn's non-class hourly or overtime rate.  Second, even if Clybourn did receive her paystubs, they would not comply with Section 195(1) because it requires notice "at the time of hiring," not at the time of payment.

**B.       Pay Statement**

Clybourn has stated a valid claim for failure to provide a pay statement. NYLL provides that "every employer shall . . . furnish each employee with a statement with every payment of wages." NYLL § 195(3).[2] In her complaint, Clybourn claims that Defendants violated this provision because she was unable to access her paystubs through the online system. Doc. 1, 3. In response, Defendants argue that this amounts to a "conclusory allegation supported by hearsay," Doc. 19, 14, and that "any employee receiving payroll through a payroll service can simply call the payroll service to receive their paystubs," as set forth in an extrinsic document. Doc. 25, 13. Neither argument is persuasive. Clybourn has plainly alleged that she was unable to access the online system utilized by Defendants. This is sufficient at this juncture. Furthermore, even if Clybourn could call a number to receive her paystubs, as discussed above the Court may not rely on such extrinsic evidence. In any event, a violation could plausibly still exist because the statute requires employers to "furnish" pay statements. The statute's text does not require employees to "request" their paystubs and Defendants have not identified any legal authority reading in this requirement.

**C.       Contract Claims**

"Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011). Clybourn claims that the employment agreement is an enforceable contract, that Defendants breached the agreement by, among other things, failing to pay her the compensation required by the agreement, and that she

---

[2] The Court dismisses Defendants' arguments that Plaintiff's fourth cause of action (failure to issue pay notices) and fifth cause of action (failure to furnish wage statements) are likewise duplicative because the claims differ: § 195(3) requires a statement "with every payment of wages" and § 195(1) requires a pay notice "at the time of hiring."

7

suffered to the extent of the underpayment. Doc. 1, 5. Specifically, she claims that she should have received $29,600, before taxes, for teaching approximately 148 classes, but that Defendants only paid her $24,381.47, before taxes. Doc. 1, 4. As a result, Clybourn's contract claim may proceed.

Clybourn makes an analogous claim under NYLL § 191(1)(d). That law provides, "A clerical and other worker shall be paid the wages earned in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer." NYLL § 191(1)(d). The Second Circuit has foreclosed this claim: "Labor Law § 191 by its terms only involves the timeliness of wage payments, and does not appear to afford to plaintiffs any substantive entitlement to a *particular* wage." *Myers v. Hertz Corp.*, 624 F.3d 537, 545 (2d Cir. 2010). As a result, Clybourn's § 191(1)(d) wage claim is dismissed and the Court need not reach Defendants' contention that Plaintiff's claims for breach of contract and failure to pay wages are duplicative. Doc. 19, 14.

**D.      Anti-Retaliation**

Pursuant to NYLL § 215(1)(a):

> No employer . . . shall discharge . . . any employee (i) because such
> employee has made a complaint to his or her employer . . . that the
> employer has engaged in conduct that the employee, reasonably
> and in good faith, believes violates any provision of this chapter, or
> any order issued by the commissioner.

NYLL § 215(1)(a). "An employee complaint or other communication need not make explicit reference to any section or provision of this chapter to trigger the protections of this section." *Id.* In a related context, retaliation for opposing unlawful discrimination, the Court of Appeals has held:

> In order to make out the claim, plaintiff must show that (1) she has
> engaged in protected activity, (2) her employer was aware that she
> participated in such activity, (3) she suffered an adverse

8

y

>employment action based upon her activity, and (4) there is a causal connection between the protected activity and the adverse action.

*Forrest v. Jewish Guild for the Blind*, 819 N.E.2d 998, 1012 (N.Y. 2004).  In *Kim v. Goldberg, Weprin, Finkel, Goldstein, LLP*, the First Department elaborated on the final prong of the test and held that, at the motion to dismiss stage, "plaintiff's termination two months after the second complaint may establish the necessary causal nexus between the protected activity and her discharge."  987 N.Y.S.2d 338, 343 (N.Y. App. Div. 2014).

For purposes of this motion, Clybourn has satisfied these requirements:  (1) she engaged in protected activity by complaining to Defendants about possible NYLL violations—missing payroll statements and late payments—in a meeting on February 2, 2018, and in emails on February 2 and February 4, 2018; (2) she suffered an adverse employment action in the form of a termination; and (3) a causal connection exists between her protected activity and the adverse employment action because Defendants fired Clybourn the day after she complained.

Defendants raise two counterarguments.  First, Defendants argue that Clybourn did not engage in protected activity.  To support this point, Defendants write that Clybourn expressed "generalized grievances" to a supervisor, without referencing a violation of state law, pointing to a specific violation of the NYLL, or contemplating further action.  *Id.*

As Defendants recognize in their brief, Doc. 19, 8, "the NYLL's anti-retaliation provision unquestionably protects informal complaints made to an employer."  *Duarte v. Tri-State Physical Med. & Rehab., P.C.*, No. 11 CIV. 3765 NRB, 2012 WL 2847741, at *3 (S.D.N.Y. July 11, 2012).  Moreover, her failure to cite to a particular NYLL provision in her communications has no legal significance because the NYLL provides that "[a]n employee complaint or other communication need not make explicit reference to any section or provision of this chapter to trigger the protections of this section."  NYLL § 215(1)(a).  In any event, Clybourn, in her

February 4, 2018 email, specifically writes, "I have not received my proper pay or pay stubs" and "[t]his is against the law." Doc. 23-1. Thus, Defendants cannot claim that they were not put on notice that their conduct was contrary to law.

Second, Defendants question the sufficiency of the causal relationship between Clybourn's complaint and her termination by highlighting other alleged reasons for her firing. They state that Clybourn was fired because she was "insubordinate and failed to report to work and was not following the instructions of her Supervisor or satisfying class attendees for her classes—which was her job." Doc. 19, 13. At the motion to dismiss stage, these alternative explanations, even if true, cannot break the causal connection created by the allegations that Defendants terminated Clybourn the day after receiving her last complaint. Doc. 1, 4–5. *See Kim*, 987 N.Y.S.2d at 343 (holding that "plaintiff's termination two months after the second complaint may establish the necessary causal nexus between the protected activity and her discharge").

## V.    Conclusion

For the reasons stated above, Defendants' motion to dismiss Clybourn's complaint is DENIED in part, and GRANTED in part. The parties are directed to appear for a pretrial conference on Friday January 11, 2019 at 2:30 PM. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 18.

It is SO ORDERED.

Dated: December 12, 2018
New York, New York

                                                                Edgardo Ramos, U.S.D.J.